IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Demetric Hardaway, | ) | C/A No. 8:13-cv-02621-RMG-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden of Lee Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on a motion for summary judgment filed by Respondent. [Doc. 17.] Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on September 20, 2013.[1] [Doc. 1.] On December 20, 2013, Respondent filed a motion for summary judgment and a return and memorandum to the Petition. [Docs. 17, 18.] Respondent filed additional attachments to the return and memorandum on December 23, 2013. [Doc. 21.] Also on December 23, 2013, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 19.] On January 30, 2014, Petitioner filed a response in opposition to Respondent's motion. [Doc. 22.]

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, this action was filed on September 20, 2013. [Doc. 1-1 at 2 (envelope stamped as received by the prison mail room on September 20, 2013).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is presently confined in the South Carolina Department of Corrections at Lee Correctional Institution pursuant to orders of commitment of the Charleston County Clerk of Court. [Doc. 1.] In October 2007, Petitioner was indicted for murder. [App. 90–91.[2]] On September 25, 2008, represented by Ashley Pennington ("Pennington"),[3] Petitioner pled guilty to the lesser offense of voluntary manslaughter and received a sentence of twenty years imprisonment. [App. 1–22.] No direct appeal was filed.

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on April 30, 2009. [App. 20–28.] Petitioner raised the following grounds for relief, quoted substantially verbatim:

(a)    Ineffective assistance of counsel

(b)    Conflict of Interest

(c)    Manslaughter instructions should have not be[en] given

[App. 22.] In support of his grounds for relief, Petitioner provided the following facts, quoted substantially verbatim:

---

[2]The Appendix can be found at Docket Entry Number 18-1.

[3]Petitioner was represented by Pennington at the plea hearing [App. 1–18]; however, Pennington was standing in for Jason Mikell ("Mikell"), who represented Petitioner but was out of town on the day of the plea hearing [App. 5].

2

(a)   Counsel neglected our fiduciary relationship by abandoning me on the day of sentencing which in doing so, he jeopardized my liberty with his imperfect duty. Counsel failed to apply the correct law and also failed to research the law and facts surrounding the imposition of the sentence.

(b)   Mr. Jason T. Mikell was appointed to represent me, somewhere between April 11, 2007 and April 17, 2007. I relieved him on May 25, 2007 due to the fact that, I had acquir[]ed a private attorney. The private attorney named, JoMichael Bosnak overseed my case from May 25, 2007 until April 17, 2008. On April 17, 2008 Mr. Bosnak stated, that it was impossible for him to be productive during trial due to a broken rotators cup. I strongly, believe that his true reason(s) for not going forth with my case was unspecified, but I still consented to his desire to be relieved. Due to the lack of resources, I later requested for public assistance and Mr. Jason T. Mikell was reassigned to my case. Mr. Mikell was more in opposition of my desire to pursue the law of self-defense, rather than siding with me and/or seeking the best possible remedy, option. Mr. Mikell's previous relief is sufficient enough reason to suggest that it open[]ed doors for conflict, incompatibility, lower degrees of honesty, and absence of faithful integrity. Mr. Mikell should not have been reassigned to my case because that action clearly denies my Sixth Amendment Right. The right to assistance of counsel has been held to imply the right to effective assistance of counsel. Therefore, I was prejudiced.

(c)   Failure to charge on the specific elements of self-defense that applied to defendants theory constitutes reversible error. Victims prior acts of violence toward another is relevant to defendants theory of self-defense. Criminal law []24(4) If evidence of self-defense is clearly and definitely introduced at trial, it becomes duty of trial judge to charge law applicable to such defense, whether requested or not.

[App. 23–24.] The State filed a return on August 17, 2009. [App. 29–32.]

3

An evidentiary hearing was held on March 3, 2011, at which Petitioner was represented by Laura E. Paris ("Paris"). [App. 35–73.] At the hearing, Paris offered a memorandum in support of relief, which the court accepted and incorporated in the record. [App. 35, 74–80; Doc. 18-2.] At the hearing and in the memorandum, Paris clarified that Petitioner was moving forward on the following grounds:

(1)    Petitioner received ineffective assistance of counsel, and his guilty plea was not voluntary, because Mikell abandoned Petitioner on the cusp of trial without having fully investigated self-defense.

(2)    Petitioner's guilty plea was not knowing in that he was not advised of the elements and mandatory minimum sentences of claims to which he pled.

[App. 38, 74–80; Doc. 18-2.] At the conclusion of the hearing, the PCR court denied relief. [App. 66–72.] On May 2, 2011, the PCR court issued an order denying and dismissing the PCR application with prejudice. [App. 81–88.]

A notice of appeal was timely filed. On December 14, 2011, Robert M. Dudek ("Dudek") of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a petition for writ of certiorari in the South Carolina Supreme Court. [Doc. 18-3.] The petition asserted the following as the sole issue presented:

> Whether the PCR court erred by ruling defense counsel correctly reasoned petitioner could not have established a self-defense case had he gone to trial because he followed the decedent after the decedent got out of the car, where petitioner said he wanted to talk to the decedent some more, where it was undisputed the decedent was armed and petitioner testified he shot the decedent because he felt threatened for his life since petitioner merely following decedent did not automatically mean he brought on the unforeseen difficulty of the decedent pulling a gun, or appearing to pull a gun, on him, and this erroneous legal advice caused petitioner to plead guilty where counsel also admittedly was not prepared for trial?

4

[*Id.* at 3.]  The State filed a return on February 28, 2012 and moved to supplement the appendix.  [Docs. 18-4, 18-5.]  The Supreme Court of South Carolina granted the motion to supplement the appendix on March 16, 2012.  [Docs. 18-6, 18-7.]  The Supreme Court transferred Petitioner's PCR appeal to the South Carolina Court of Appeals [*see* Doc. 18-8 (order on petition for writ of certiorari from the South Carolina Court of Appeals)], which denied the petition on July 16, 2013 [Doc. 18-8] and remitted the matter to the lower court on August 1, 2013 [Doc. 18-9].

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on September 20, 2013.  [Doc. 1.]  Petitioner raises the following grounds for relief, quoted substantially verbatim, in his Petition pursuant to 28 U.S.C. § 2254:

> **GROUND ONE:** Denial of Effective Assistance of Counsel because my attorney(s), a) failed to explain the nature and crucial elements of the offense, the maximum and mandatory minimum penalty and the nature of the constitutional rights being waived prior to accepting the plea of guilt; b) failed to interview witnesses; c) erroneously advised me that I could not show that I was without fault in bringing on the difficulty because I followed the decedent; d) failed to fully investigate my self-defense claims(s).
>
> *Supporting facts*: a) During direct examination at P.C.R. hearing cou[n]sel was asked; Do you have any evidence besides your own testimony as to the conversations that you had with Mr. Hardaway explaining the nature and elements of the crimes?  Counsel responded: I am - - I remember going over with him - - I don't remember in exactly how much detail but I remember explaining the differences in the defenses as far as the voluntary or murder.  That's just a general practice for me, to do that and go over there - especially in a case as serious as Demetric's.  During direct examination at P.C.R. hearing counsel was

5

asked: Do you have a recollection of explaining to Mr. Hardaway the mandatory minimum of the crime to which he ultimately pled? Counsel responded: I don't - - no no. I don't remember that.

b) During direct examination at P.C.R. hearing counsel was asked: Did you ever have an opportunity to speak with any of the witnesses in this case? Counsel responded: no.

c) During direct examination at P.C.R. hearing counsel stated: We went through the element of self-defense, what self-defense means. The biggest element that we talked about was that you can't be at fault in bringing on the confrontation. My concern was that Demetric had gone over to the victim, followed the victim and basically initiated this confrontation.

d) During direct examination at P.C.R. hearing counsel was asked; What discovery or investigation did you do in this case to explore the possibility of self-defense? Counsel responded: I looked at the statement of everyone involved. I spoke with Demetric a few times about what the statements - - how the statements may play out in court as far as each individual may testify. I also spent time explaining self-defense and the elements of self-defense and going over there. So that way Demetric had a good understanding of what it meant. Because, ultimately, as I said before, one of the - - one of the - - the huge hurdle and the biggest issue was the self-defense claims going to be the element relating to bringing on the altercation or bringing on the danger. So what we couldn't do was that we - - we really couldn't create a strategy that was going to prevail for a self-defense. I guess, "argument." I think - - I don't know what Demetric was thinking when he ultimately decided to enter the plea but I assume that a lot of it would have to do with that particular part.

**GROUND TWO:** Involuntary and unknowing guilty plea because circuit court failed to advise me of the nature and crucial elements of the offense, the maximum and mandatory minimum penalty prior to accepting the plea of guilt.

*Supporting facts*:   During plea hearing the court stated: Mr. Hardaway, you're here today. You've been indicted by indictment 07-GS-10-11998 for murder. That carries of a sentence of up to life imprisonment, a minimum of thirty. It looks like the state is going to let you plead guilty to voluntary manslaughter, voluntary manslaughter carries a sentence of up to thirty years in prison. I'm told that you want to plead guilty to voluntary manslaughter is that correct.

Denial of Effective Assi[s]tance of Counsel because attorney(s), a) failed to explain the nature and crucial elements of the offense, the maximum and mandatory minimum penalty and the nature of the constitutional rights being waived prior to accepting the plea of guilt: It was never established that counsel advised me of the nature and crucial elements of the offense, the maximum and mandatory minimum penalty in relation to voluntary manslaughter which is 2 years. A guilty plea is not freely and voluntarily given when counsel for an applicant fails to explain nature and crucial elements of the offense the maximum and minimum penalty and the nature of the constitutional rights being waived prior to accepting the plea.

b) failed to interview witnesses: Shamon Toneshia Cox stated in he sworn statement to Det. Elmore when questioned: Do you know or have you seen the victim before? I don't know him, but I have seen him around here it just seem like the guy who shot him was who he came here with. It's like the guy walked him to the door then started shooting him. They had been talking just before the shots. Counsel should have interviewed this witness to discover if she'd heard anything which would have strengthened my defense. Myesha Samone Grant states in her sworn statement to Det. Gomes: I heard Tremaine [decendant] laughing and say "go ahead dogg, go ahead with all that," I heard someone else laugh. I then heard few gun shots. Counsel should have interviewed this witness to discover if she'd heard anything which would have strengthened my defense. Estern C. Backman indicated in his sworn statement to Det. J. Hill: Main [decedent] was talking saying this guy thinks I'm joke. Counsel should have interviewed this witness to discover if he'd heard

7

anything that would have strengthened my defense. Irvin Robinson indicates in his sworn stated, statement to Det. O. Faison: Tremaine [decedent] started talking junk about how this is a new year 2007 and Demetric [I] better keep my name out your mouth. I asked him what you mean by that. Tremaine said it don't have nothing to do with you or the driver. So I thought he was talking about Demetric [I].

The whole way to North Charleston Demetric didn't said anything to Tremaine [decedent]. Counsel should have interviewed this witness because this witness possessed information that would have strengthened my defense. Though later on this witness indicates that I was armed when I approached decedent we must be mindful that this statement came after Mr. Robinson was wanted for accessory after the fact of murder. At a minimum counsel has the duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case. Counsel in criminal cases are charged with the responsibility of conducting appropriate investigations, both factual and legal, to determine if matters of defense can be developed.

c) Counsel erroneously advised me that I could not show that I was without fault in bringing on the difficulty because I followed the decedent. This view represents a common fallacy with the law of self-defense. Defendants are seldom doing the "smart" thing when a fatal confrontation occurs, but does not necessarily mean they are at fault for purposes of the fist element of self-defense. State has the burden of disproving self-defense once properly raised at trial.

d) Failed to fully investigate my self-defense claims: Counsel abandoned my self-defense claim based solely on his personal assumption that I couldn't show that I was without fault in bringing on the difficulty. Therefore, counsel assumed that I provoked the decedent into pulling or appearing to pull a gun on me, counsel came to this conclusion despite my statement to investigators indicating that I wanted to communicate with decedent. Counsel failed to interview those witnesses which left me no defense or evidence of mitigation at trial,

8

effectively forcing me to throw myself upon the mercy of the court. It is clearly demonstrated that if further investigation had been done into the witnesses account additional support for my self-defense claim would have been gathered.

Involuntary and unknowing guilty plea because circuit court failed to advise me of the nature and crucial elements of the offense, the maximum and mandatory minimum penalty prior to accepting the plea of guilt. Rule 11 does not require court's to inform defendants of the applicable guidelines sentencing ranges, but it does require district courts to inform defendants of all potentially applicable statutory minimum and maximum sentences.

[Doc. 1 at 6–10 (internal citations omitted) (some alterations in original).] As stated, on December 20, 2013, Respondent filed a motion for summary judgment. [Doc. 17.] On January 30, 2014, Petitioner filed a response in opposition. [Doc. 22.] Accordingly, the motion is ripe for review.

## **APPLICABLE LAW**

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court

9

may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at

252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude

granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355,

365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over

facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment.  Factual disputes that are irrelevant or

unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides

in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed
> must support the assertion by:
>
> > (A) citing to particular parts of materials in the record,
> > including depositions, documents, electronically stored
> > information, affidavits or declarations, stipulations
> > (including those made for purposes of the motion only),
> > admissions, interrogatory answers, or other materials;
> > or
> >
> > (B) showing that the materials cited do not establish the
> > absence or presence of a genuine dispute, or that an
> > adverse party cannot produce admissible evidence to
> > support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to

the non-movant, he must produce existence of a factual dispute on every element essential

to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28

U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,*

134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief

12

to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)    (I) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

13

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[4] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

### Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to

15

file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual

16

prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

## *Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## DISCUSSION

**Procedurally Barred Claims**

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Here, Respondent contends all grounds raised in the Petition are procedurally barred. [Doc. 18.] Respondent also argues Petitioner cannot overcome the default of these grounds because he cannot establish cause and prejudice or a miscarriage of justice. [*Id.*] Petitioner appears to argue he can establish cause for any procedurally barred claims of ineffective assistance of defense counsel under *Martinez v. Ryan*, — U.S. —, 132 S.Ct. 1309 (2012), because PCR counsel was ineffective. [Doc. 22 at 8–9.] The Court agrees that some grounds are procedurally barred.

### *Grounds Not Presented to the South Carolina Supreme Court in Petitioner's Petition for Writ of Certiorari*

The following grounds are procedurally barred because they were not presented to the South Carolina Supreme Court in Petitioner's petition for writ of certiorari [*see* Doc. 18-3]:

Ground One (a):    Ineffective assistance of counsel for failure to explain the nature and crucial elements of the offense, the maximum and mandatory minimum penalty, and the nature of the constitutional rights being waived prior to accepting the plea of guilt.

Ground One (b):    Ineffective assistance of counsel for failure to interview witnesses.

18

Ground One (d):     Ineffective assistance of counsel for failure to fully investigate self-defense claim.

Because these grounds were not fairly presented to the South Carolina Supreme Court, they are procedurally barred from federal habeas review absent a showing of cause and actual prejudice. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### *Grounds Not Raised On Appeal*

The following ground is procedurally barred as a direct claim because it was not raised on appeal in that Petitioner did not file a direct appeal:

Ground Two:     Involuntary and unknowing guilty plea because circuit court failed to advise me of the nature and crucial elements of the offense, the maximum and mandatory minimum penalty prior to accepting the plea of guilt.

Because these claims were not presented on appeal, they are procedurally barred from federal habeas review absent a showing of cause and actual prejudice.

### *Cause and Prejudice*

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Carrier*, 477 U.S. at 488. *But see Martinez*, 132 S. Ct. at 1315 ("Inadequate assistance of counsel at *initial-review* collateral proceedings *may* establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." (emphasis added)).

19

Here, Petitioner does not argue that he can establish cause to overcome the procedural bar of Ground Two; therefore, Ground Two is procedurally barred from consideration by a federal habeas court and should be dismissed. However, Petitioner appears to argue that he can establish cause for all ineffective assistance of counsel claims raised in Ground One. [Doc. 22 at 8–9 (noting that Ground One (a), which Petitioner refers to as claim A(1), was defaulted based on "appellant counsels failure to raise this claim on appeal" and Grounds One (b), (c), and (d), which Petitioner refers to as claims A(2), (3), and (4), were defaulted because of "PCR counsels ineffectiveness"). As discussed below, out of an abundance of caution, the Court does not consider Ground One (c) to be procedurally defaulted. Accordingly, the Court addresses whether Petitioner can establish cause under *Martinez* with respect to Grounds One (a), (b), and (d).

In *Martinez*, the Supreme Court elaborated,

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318. Accordingly, Petitioner may establish cause for the default of these grounds if he demonstrates that (1) his PCR counsel was ineffective and (2) the underlying ineffective assistance of trial counsel claim is a substantial one, i.e., it has some merit.

However, the Court in *Martinez* did not extend its holding to PCR appellate counsel, but only counsel in initial review collateral proceedings. *Cunningham v. Cartledge*, Civil Action No. 5:11–cv–1037–JMC–KDW, 2012 WL 4006683, at *13 (D.S.C. Jun. 27, 2012). Therefore, because the procedural default of Grounds One (a), (b), and (d) occurred at the PCR appeal in that they were not raised in the petition for writ of certiorari, Petitioner may not rely on *Martinez* to establish cause with respect to these two grounds. Accordingly, these claims are procedurally barred from consideration by a federal habeas court and should be dismissed.

**Merits of Remaining Ground**

In Ground One (c), Petitioner argues defense counsel was ineffective for erroneously advising Petitioner that he could not establish that he was without fault for bringing on the danger. In the petition for writ of certiorari to the Supreme Court of South Carolina, Petitioner raised the issue,

> Whether the PCR court erred by ruling defense counsel correctly reasoned petitioner could not have established a self-defense case had he gone to trial because he followed the decedent after the decedent got out of the car, where petitioner said he wanted to talk to the decedent some more, where it was undisputed the decedent was armed and petitioner testified he shot the decedent because he felt threatened for his life since petitioner merely following decedent did not automatically mean he brought on the unforeseen difficulty of the decedent pulling a gun, or appearing to pull a gun, on him, and this erroneous legal advice caused petitioner to plead guilty where counsel also admittedly was not prepared for trial?

[Doc. 18-3 at 3.] Liberally construing the Petition, as the Court must do, the claim raised here is the same as the claim raised in the petition for writ of certiorari—that defense counsel was ineffective for advising Petitioner that he could not establish self defense

21

because he could not establish that he was not at fault for bringing on the danger from which he was allegedly defending himself. Although not raised in exactly the same manner to the PCR court, in its order, the PCR court made a finding that "[c]ounsel had a legitimate concern about whether the jury would find that Applicant was not at fault for bringing about the danger." [App. 87.] Accordingly, because the PCR Court made a finding with respect to the claim and the claim was raised to the Supreme Court of South Carolina, this Court will address the merits of this claim.

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06. On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule

but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[5] *Richter*, 131 S.Ct. at 785. "A state court must be granted a deference and

---

[5]In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. 668, 687 (1984). To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

latitude that are not in operation when the case involves review under the Strickland standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas").  Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent.  *Id.*

Here, the PCR court evaluated Mikell's performance under the standards set forth in *Strickland* and *Hill*.  [App. 84–87.]  The PCR court found,

---

In the specific context of a guilty plea, to satisfy the prejudice prong of *Strickland*, a prisoner must show that "there is a reasonable probability that, but for counsel's errors, [the prisoner] would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  The Supreme Court further explained,

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial.  For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.  This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. . . . As we explained in *Strickland v. Washington*, *supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker."  *Id.*, 466 U.S., at 695, 104 S.Ct., at 2068.

*Hill*, 474 U.S. at 59–60.

24

Regarding the Applicant's claims of ineffective assistance of counsel, this Court finds the Applicant has failed to meet his burden of proof. This Court finds that Applicant's attorneys demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of attorneys who practice criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 239 S.E.2d 750 (1977); Strickland, 466 U.S. at 668; Butler, 286 S.C. 441, 334 S.E.2d 813. This Court further finds Applicant's attorneys adequately conferred with the Applicant, discussed the elements and sentencing range for each offense, conducted a proper investigation, and were thoroughly competent in their representation. Counsel successfully obtained a favorable negotiated sentence for Applicant. This Court finds that counsel's representation did not fall below an objective standard of reasonableness.

This Court finds that counsel properly investigated Applicant's self-defense claim. Counsel had a legitimate concern about whether the jury would find that Applicant was not at fault for bringing about the danger. Applicant's attorneys discussed the elements of self-defense with him, informed him of the pros and cons of accepting the plea offer, and allowed Applicant and his family to make the ultimate decision on whether to plead guilty or go to trial.

This Court finds that Mr. Mikell did not abandon Applicant on the cusp of trial. Mr. Mikell properly requested that Mr. Pennington assist in the case so that Applicant would not lose the benefit of the negotiated plea offer. The trial was not imminent, and this Court finds that Mr. Mikell would have been fully prepared for trial by October 6, 2008.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that his attorneys committed either errors or omissions in their representation of the Applicant. The Applicant failed to show that counsel's performance was deficient. This Court also finds the Applicant has failed to prove the second prong of Strickland, specifically that he was prejudiced by plea counsel's performance. Applicant's complaints concerning counsel's performance are without merit and are denied and dismissed.

25

[App. 86–87.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* and *Hill* standards, which are the applicable Supreme Court precedents. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland* or *Hill*. The PCR court considered plea counsel's advice to be correct, noting at the evidentiary hearing, "Clearly in this case, based on what is recited in the record and what transpired, there were some major issues with the self-defense" in that "there was no reason for the confrontation," and further noting the victim was shot eight times. [App. 67–68.] These concerns were reasonable based on state law. *State v. Bryant*, 520 S.E.2d 319, 322 (S.C. 1999) ("Any act of the accused in violation of law and reasonably calculated to produce the occasion amounts to bringing on the difficulty and bars his right to assert self-defense as a justification or excuse for a homicide."); *State v. Jackson*, 87 S.E.2d 681, 684 (S.C. 1955) ( a defendant "cannot through his own fault bring on a difficulty and then claim the right of self-defense"); *see also State v. Slater*, 644 S.E.2d 50, 53 (S.C. 2007) (holding the trial court correctly found the defendant was not entitled to a self-defense charge because his actions, including the unlawful possession of the weapon, proximately caused the

26

exchange of gunfire and ultimately the death of the victim, and any act of the accused in violation of law and reasonably calculated to produce the occasion amounts to bringing on the difficulty and bars the right to assert self-defense).  The facts supporting the PCR court's reasoning are well founded in the record from the plea and in counsel's testimony at the PCR hearing.  [App. 8–11, 46–47.]  Therefore, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief on this ground.  Accordingly, Respondent's motion for summary judgment should be granted with respect to this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 25, 2014
Greenville, South Carolina